FA8JOLIS                              Sentence

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                                 15 Cr. 194 VEC

ERNESTO OLIVO, a/k/a Ernesto Perez,
a/k/a Jimenez,

                 Defendant.

------------------------------x

                                          October 8, 2015
                                          2:00 p.m.


Before:

                 HON. VALERIE E. CAPRONI,

                                          District Judge


                       APPEARANCES

PREET BHARARA,
        United States Attorney for the
        Southern District of New York
JESSICA ROSE LONERGAN,
RUSSELL CAPONE,
        Assistant United States Attorneys

RICHARD HARRIS ROSENBERG,
DARRYL AUSTIN,
        Attorneys for defendant Olivo

Also Present:
        DAGOBERTO ORRANTIA,
        Certified Spanish Interpreter

FA8JOLIS                        Sentence

1          (In open court)

2          (Case called)

3          THE COURT:  Good afternoon.

4          THE CLERK:  Spanish Interpreter Dagoberto Orrantia is

5     present.

6          THE COURT:  Mr. Rosenberg, have you and your client

7     had an opportunity to read the presentence report, dated

8     September 16, 2015?

9          MR. ROSENBERG:  Yes, your Honor, with an interpreter

10    we reviewed it.

11         THE COURT:  Mr. Olivo, your attorney has just told me

12    you read the presentence report.  Is that correct?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  You've discussed it with your attorney?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  Mr. Rosenberg, are there any objections to

17    the report?

18         MR. ROSENBERG:  No, your Honor, just as I noted in my

19    presentence submission, my sentencing submission, the

20    calculation by the Probation Department on the meth and the

21    cocaine is riding on your decision on the Rule 29, so maybe

22    I'll reserve comments and see how your Honor is ruling on that.

23    That might moot out my arguments.

24         THE COURT:  I think everybody agrees on meth, and we

25    can talk about coke.

FA8JOLIS                    Sentence

1          MR. ROSENBERG:  The meth, I thought they were

2     double-counted.

3          THE COURT:  They did double-count.  I think everybody

4     agrees they double-counted.

5          MR. ROSENBERG:  That is a relief that I was correct on

6     that.

7          THE COURT:  So the presentence report will be made

8     part of the record in this matter and placed under seal.  If an

9     appeal is taken, counsel on appeal may have access to the

10     sealed report without further application to the court.

11          Okay.  On the Rule 29, does anybody want to be heard?

12          MR. CAPONE:  No, your Honor.  Unless you have

13     questions, the government will defer, rely on its brief.

14          MR. ROSENBERG:  Similarly, your Honor.

15          THE COURT:  I'll get to those when I go through the

16     sentencing calculation.  Let me say I have received a

17     sentencing submission from the government and from the defense.

18     Included in the defense submission were letters from

19     Mr. Olivo's daughter and from many friends both here in the

20     United States as well as in the Dominican Republic.

21          Mr. Rosenberg, Exhibit M was misfiled.  It is a letter

22     to Judge Block in connection with a different defendant's case.

23          MR. ROSENBERG:  Sorry.  I got it mixed up.

24          THE COURT:  That is quite all right.  I want to make

25     sure it gets to Judge Block.

FA8JOLIS                    Sentence

1          MR. ROSENBERG:  That is passed already.  I must have

2     clicked "Otero" instead of "Olivo."

3          THE COURT:  Has the government filed its submission

4     with the clerk?

5          MS. LONERGAN:  Your Honor, we filed it on ECF.

6          THE COURT:  Mr. Rosenberg, did you file your

7     submission on ECF?

8          MR. ROSENBERG:  Sorry?

9          THE COURT:  Did you file your submission on ECF?

10         MR. ROSENBERG:  I did, yes.

11         THE COURT:  Let's talk about the quantity of drugs

12    that Mr. Olivo will be held responsible for.

13         The jury returned a special verdict, indicating that

14    they found that the conspiracy involved more than five

15    kilograms of cocaine.  I asked the parties to address whether

16    that finding could be sustained.  I read the parties'

17    submission, and I find the jury's special verdict was supported

18    by the evidence, although I disagree with the government on the

19    amount of cocaine that the evidence supports.  For the reasons

20    that will be clear, that disagreement does not affect the

21    actual guidelines calculation.

22         I find the evidence supports a finding that the

23    defendant was involved in a conspiracy that involved at least

24    15 kilograms of cocaine.  To walk through what my calculation

25    is, the conversation that went into evidence between Garcia and

FA8JOLIS                          Sentence

the defendant in which Garcia agreed to take two or three

kilograms from a larger shipment, viewing that evidence in

light most favorable to the government, I attribute that three

kilograms to the conspiracy that Mr. Olivo was a part of.

It is true that that discussion made it clear the two

or three kilograms was part of a larger shipment, but the

actual weight of that larger shipment is unknown.  The evidence

connecting it to the 18 kilograms that were seized in Miami is

just too speculative.  It rests entirely on Mr. Garcia

indicating that the conversation took place during good

weather, which may or may not have been about the same time as

the seizure in Miami.

In terms of the 18 kilograms that were seized in

Miami, I do not count that.  There was no non-hearsay evidence

of how the defendant learned of that number, of the telephone

number he was supposed to call.  It is not inconceivable to me

the informant learned about it and put the defendant up to the

call, so I am not going to count the 18 kilograms as cocaine

that Mr. Olivo is responsible for.

In November 2014, the one kilogram deal that Garcia

was involved with in connection with which he was arrested

accounts as a kilogram that Mr. Olivo was responsible for.

In November 2014, the conversation with El Garte, in

that conversation they discussed the fact that the defendant

had received 10 kilograms of cocaine that had not been paid for

FA8JOLIS                        Sentence

1    but apparently had been sold, so that 10 kilograms Mr. Olivo is

2    responsible for.

3            In September 2014, there was a conversation, these are

4    all on the phones or text messaging, the conversation with the

5    gangster discussed the delivery of one kilogram of cocaine.

6    Mr. Olivo is responsible for that.

7            I do not count the conversation between J.R. Love and

8    the defendant.  I think it is too cryptic to figure out what

9    the quantity was.  J.R. Love says that the defendant will make

10   three to five minimum, but it isn't clear to me whether that is

11   a quantity or an expected dollar profit, so I did not count

12   that.  Nonetheless, adding all of that up, we come up to 15

13   kilograms of cocaine for which the defendant is responsible.

14           Does the government want to be heard on that

15   calculation?

16           MS. LONERGAN:  Your Honor, I know that you initially

17   previewed by saying that it was different than the government's

18   calculation, but the guideline range that the government is

19   seeking with respect to cocaine is 15 to 50 kilograms and, in

20   fact, the calculation that the government did with respect to

21   converting it to marijuana --

22           THE COURT:  Was based on 15.

23           MS. LONERGAN:  -- is based on 15.  There may be

24   disagreement with respect to the 18, but I think there is no

25   disagreement with respect to the guidelines.

FA8JOLIS                    Sentence

1          THE COURT:  I think that's right.  I think we disagree

2     on whether he can be held accountable for the 18 kilograms that

3     were seized in Miami.

4          MS. LONERGAN:  Understood, your Honor.

5          THE COURT:  Mr. Rosenberg, would you like to be heard?

6          MR. ROSENBERG:  No, your Honor.

7          THE COURT:  As to the guidelines calculation, the PSR

8     reflects a guidelines level of 36, Criminal History Category I,

9     yielding a sentencing range of 188 to 235 months.  I find the

10    correct guidelines calculation to be as follows:

11         The base offense level is found in 2D1.1.  Because

12    multiple drugs were involved, everything has to be converted to

13    the poundage of marijuana.  15 kilograms of cocaine equals

14    30,000 kilograms of marijuana.  1.5 kilograms of actual

15    methamphetamine equals 30,000 kilograms of marijuana.  That is

16    a total of 60,000 kilograms of marijuana.  Under No. 2D1.1

17    (c)(2), that yields an offense level of 36.

18         Would the defendant like to be heard on whether there

19    should be an obstruction of justice enhancement?

20         MR. ROSENBERG:  Well, your Honor, we note that the PSR

21    did not calculate that, and the government in their submission,

22    while making reference to Mr. Olivo's testimony, did not

23    specifically object to failure of the Probation Department to

24    include that.  So I note that at the outset.

25         Secondly, your Honor, I think his testimony was more

FA8JOLIS                         Sentence

than just saying he was not guilty, and in any case, and I

would submit that Mr. Olivo's trial testimony was more of his

opinion about or his viewpoint of what his conduct constituted

and more of his opinion than fact.

            THE COURT:  Would the government like to be heard?

            MS. LONERGAN:  It is true, your Honor, we are not

seeking the obstruction of justice enhancement.  Nevertheless,

the government's position is that the defendant did, in fact,

lie in his testimony.  He did not simply assert his innocence.

            His testimony was much more detailed and in-depth than

that and included outright falsehoods, such as the fact that

the phones that were in his home were not his phones, they were

being used by his cousin, but sometimes by him, but every drug

conversation on his phones went to his cousin was using his

phones, his cousin sometimes used his wheel wheelchair.  These

are not true statements.

            Nevertheless, the government has not sought the

obstruction of justice enhancement, although I do think the

facts would support it here, but we have not sought it in light

of particularly the high guidelines range the defendant is

already facing.

            THE COURT:  Okay.  Well, I find an obstruction of

justice enhancement is appropriate because I think the

defendant lied.  I think he lied in substantial regards.  He

may actually not have lied about the one thing he wanted to

FA8JOLIS                          Sentence

testify about, which was his connection to the Miami deal.
That actually had a certain ring of truth to it.  It was
everything else that was problematic.

So a two-level enhancement brings me to an adjusted
offense level of 38, with no criminal history, so he is in
Criminal History Category I, and that yields a guideline range
of 235 to 293 months.  Mr. Olivo would say that you should be
happy and I am happy the guidelines are no longer binding, but
I think that is the correct guidelines calculation.

MS. LONERGAN:  One thing I think on the record, I
don't think it will change the guidelines calculation, but
again my math skills, this is why I am a lawyer and not a
mathematician, but I think that 15 kilos of cocaine are 3,000
kilograms of marijuana and not 30,000.

THE COURT:  That is entirely possible that I have that
off by a zero.

MS. LONERGAN:  One gram of cocaine is 200 grams of
marijuana, which suggests to me that one kilo of cocaine is
200,000 grams of marijuana or 200 kilos.  I wrote all the
zeroes down.  Otherwise, I never would have kept track.

THE COURT:  So 15 kilograms of cocaine is 3,000
kilograms?

MS. LONERGAN:  Of marijuana, which results in 33,000
kilograms of marijuana in total, which is still Level 36.

THE COURT:  Okay.  Do you agree with that, Mr.

FA8JOLIS                    Sentence

1    Rosenberg?

2            MR. ROSENBERG:  Well, I agree that that is a quantity

3    that converts to that.

4            THE COURT:  That is the way it converts, okay.  We

5    still end up with an adjusted offense level of 38, which is a

6    guideline range of 235 to 293 months.

7            MR. ROSENBERG:  I still object to the meth quantity.

8            THE COURT:  The meth quantity?  Go ahead.  I thought

9    your objection on the meth quantity was that the PSR

10   double-counted it.

11           MR. ROSENBERG:  Well, and I also I mentioned he

12   shouldn't be held responsible for more than was actually

13   delivered to him, and I think that was gram quantities for the

14   most part, except Mr. Layton I believe testified to one

15   delivery that constituted a pound, according to his testimony.

16   It was not Mr. Collado's testimony, but Layton's testimony.  I

17   added that up, and I thought he should be not responsible for

18   no more than what he was actually, the testimony reflected was

19   actually delivered to him or to his building or that he was

20   attributed to.

21           THE COURT:  Would the government like to be heard on

22   that?

23           MS. LONERGAN:  Just briefly.  That misstates the law

24   of conspiracy.  That would be true if it was a substantive

25   transaction, but here the defendant is in a conspiracy with Mr.

FA8JOLIS                    Sentence

1    Layton and and Mr. Collado.  It is clear because at one point

2    he asks, Mr. Collado testified the defendant asks Mr. Collado

3    about delivering between three and four pounds of

4    methamphetamine to customers in Pennsylvania.

5            Now, that transaction never took place and the

6    government is not arguing that, but Mr. Collado's response to

7    the defendant was not I don't have that much meth, it is just I

8    am not going to drive to Pennsylvania.  The law of conspiracy

9    particularly with respect to sentencing has to do with what is

10   reasonably foreseeable to the defendant.

11           Based on that conversation that he had with Mr.

12   Collado, it is certainly reasonably foreseeable that the

13   quantity of methamphetamine involved was at least 1.5 kilograms

14   of actual meth.  Again the government has not asked that

15   Mr. Olivo be held responsible for the entire 20 pounds, but

16   just from the testimony of what was delivered to him plus that

17   conversation, the government believes that 1.5 kilograms of

18   actual methamphetamine is completely a reasonably foreseeable

19   amount to this defendant given his interactions with his

20   co-conspirators.

21           THE COURT:  That is also my view is that because of

22   the conversations about the three to four pounds which

23   Mr. Olivo was actively discussing and, therefore, he clearly

24   knew that that amount of meth was available and was part of the

25   conspiracy, you add that to the quantities that were actually

FA8JOLIS                        Sentence

1    delivered to him, you get to a quantity that is more than 1.5

2    kilograms.

3                MR. ROSENBERG:  I understand that math.  I just

4    dispute the imposition of the government and your Honor's

5    finding.  I cited the case about buyer-seller relationships,

6    and I think there was no more than that if at all anything.

7                THE COURT:  Okay.  I disagree, but I would also note

8    that it is not going to affect my sentence.  The sentence will

9    be the same if we dropped it down a level and it accordingly

10   dropped down substantially in terms of the guideline range.

11               Are there any other guidelines arguments I have not

12   addressed?

13               MS. LONERGAN:  Not from the government, your Honor.

14               MR. ROSENBERG:  Nothing from us.

15               THE COURT:  I do not see a grounds for departure under

16   the sentencing guidelines.  Does the government disagree?

17               MS. LONERGAN:  No, your Honor.

18               THE COURT:  How about the defense?

19               MR. ROSENBERG:  I did mention there is a departure

20   under 5K1.1 (h)(1.4), I believe it is, physical condition of

21   the defendant not being in the heartland, but being unique or

22   unusual, that the condition is "is present to an unusual degree

23   and distinguishes the case from the typical case covered by the

24   guidelines."  That is a departure based under 5H1.4.  There is

25   also 3553 (a) argument, but that is the variance of that.  That

1    is the basis.  It is in the memo.  It is a viable option for

2    your Honor and it is available to the court --

3               THE COURT:  Okay.

4               MR. ROSENBERG:  -- as a departure.

5               THE COURT:  I am not inclined to depart under the

6    guidelines.  Are there any other factual issues in dispute we

7    haven't discussed?

8               MS. LONERGAN:  I do not believe so, your Honor.

9               THE COURT:  Would the government like to be heard on

10   sentence.

11              MS. LONERGAN:  Your Honor, the government believes

12   that a substantial term of incarceration such as one within the

13   guidelines is warranted in this case.  The evidence made

14   clear -- and that evidence includes the testimony of witnesses

15   as well as the text messages on the defendant's phone -- the

16   defendant was an active broker of narcotics.

17              He was dealing with three individuals who testified in

18   this courtroom, but his phones make clear that he was dealing

19   with numerous individuals.  He was also always looking for

20   opportunities to develop new connections in the narcotics world

21   and new lines of supply.

22              Mr. Collado testified at one point the defendant

23   wanted to stay in touch with Mr. Collado because the defendant

24   was aware Mr. Collado had a good contact, a good supplier for

25   cocaine.  Even though they were currently dealing in meth, the

1    defendant was interested in potential future purchases or

2    transactions in cocaine or heroin.

3            The picture that was painted was of a man who had many

4    tentacles in the narcotics world.  Even though the transactions

5    at issue in this case, particularly the ones the witnesses

6    testified about were small, I don't think that is an accurate

7    picture.  I think the phones make clear there is one

8    conversation just about in one conversation, a 10-kilogram

9    transaction of cocaine.

10           Mr. Collado also testified the defendant had a long

11   history of drug-dealing.  While that is not clearly within the

12   time-frame of the indictment, that is also relevant to the

13   court with respect to fashioning an appropriate sentence.

14           The court has also applied an obstruction point in

15   this case, but I think the fact the defendant was willing to

16   take the stand and lie shows a significant disrespect for the

17   law and that that is also something that should be addressed by

18   the court's sentence.  Clearly defendants have the right to

19   testify, but if they lie under oath, that also I think goes

20   into fashioning the appropriate sentence.

21           Finally, I think that there is a general deterrent

22   message that is important with respect to narcotics

23   trafficking.  I know the court, I don't need to belabor this,

24   but these are serious drugs.  There have been a lot of

25   discussions recently about the mandatory minimums with respect

1    to drug laws, and I don't really think this is the kind of

2    individual who was envisioned by either Attorney General Holder

3    or Attorney General Lynch with respect to the low level drug

4    offenders who may potentially be street dealers who are then

5    held accountable for the entire weight of the conspiracy when

6    the guys on the street were making very little money.

7            That is not this defendant.  He is a much higher

8    level.  He is brokering significant transactions, so I don't

9    think the kind of climate with respect to leniency for

10   first-time offenders -- look, he does not have a record, that

11   is true.  I think, though, the testimony is that he was, in

12   fact, and has been a long time drug dealer, and I know no one

13   is asking for (b)(1)(C) treatment here, but just in terms of

14   the atmospherics around the drug convictions, I don't think he

15   is someone who deserves the kind of leniency that Attorney

16   Generals Holder or Lynch are thinking about with respect to

17   first time drug offenders.

18           THE COURT:  Thank you.  Mr. Rosenberg.

19           MR. ROSENBERG:  Your Honor, respectfully, your Honor,

20   it is our position that a sentence of the mandatory minimum of

21   120 months in this case does adequately serve to address the

22   goals of sentencing.  Certainly nobody in the public would

23   think a 10 year or 120 month sentence followed by deportation

24   is somehow a slap on the wrist, especially when an individual

25   is 52 years' old, confined to a wheelchair and has no prior

1    criminal record.

2            This is a substantial, 10 years is a substantial

3    sentence that the court is required to impose as a

4    mandatory-minimum sentence.  I would like to introduce his

5    daughter sitting in the audience, your Honor.  That is

6    Ms. Castro, and she has lived and resided with her father, and

7    she is here in spirit and heart and physically to support him.

8            THE COURT:  Ms. Castro, thank you for coming.  I am

9    sure your father appreciates it, too.

10            MR. ROSENBERG:  Your Honor, as we mentioned in our

11    submission, it is hard to reconcile Mr. Olivo being this major

12    drug or broker as he is described when he was alongside a major

13    informant for a number of years and not only was there not any

14    drug exhibits and supposedly with -- if he were the type of

15    broker or individual that was dealing in these quantities of

16    narcotics over the years, it is hard to understand how and why

17    there is no further evidence of that drug activity.

18            THE COURT:  I think one possibility -- and I am

19    speculating.  There is no evidence in the record one way or the

20    other -- the informant didn't want to give up his friend, and

21    for some reason at the end he did.  I have the same curiosity

22    as well.

23            MR. ROSENBERG:  It strikes me as so inconsistent with

24    how he is portrayed, and I think just going on the trial record

25    and accepting the trial record as true, as your Honor is

1    required to do, even the 10 years is sufficient on this record

2    for a man who has no outward trappings or accouterments of

3    wealth.  He lived in modest public housing for more than 20

4    years cutting hair and grooming dogs and subsisting on social

5    security disability, and when his house was searched, there

6    were no drug records, there were no drugs, there was no cache

7    of money or any indicia of narcotics trafficking, again

8    inconsistent with the type of broker that the government is

9    portraying him to be.

10           Your Honor, 10 years is difficult for any human being

11    to serve as a term of imprisonment.  I submit that Mr. Olivo's

12    physical condition -- and he is not paralyzed from the neck

13    down.  The PSR said that.

14           THE COURT:  I was aware of that.

15           MR. ROSENBERG:  That was inaccurate.  He is paralyzed

16    and he is unable to walk and he is confined to a wheelchair for

17    more than 20 years.  Prison is not going to be a picnic for a

18    person in that position and that disability.  I think that is a

19    compelling factor for the court to consider in imposing

20    sentence not only as punishment, the appropriate punishment for

21    the crimes that he was convicted of would serve as not only

22    individual deterrent, but general deterrence.  Not to repeat

23    myself, it is not an easy sentence and nobody can ever perceive

24    it that way.

25           So I think respect for the law and for the system of

1    justice we have will not be diminished one iota if your Honor

2    imposes, see fits to apply a variance, and I know, too, the

3    Probation Department recommended such a variance, and I joined

4    in in that request, and I think it is one that we don't see

5    very often in this courthouse where Probation recommends a

6    substantial variance.  We did see it here, and I respect that

7    and I urge the court to adopt that recommendation.

8            Thank your Honor.

9            THE COURT:  Thank you, Mr. Rosenberg.

10           MS. LONERGAN:  If I may briefly proffer something not

11   on the record, and so I understand the court will do with it

12   what it will.

13           With respect to the statements that defense counsel

14   made about the confidential source, we have spoken with the DEA

15   agents who were handling the confidential source, and we asked

16   him some of these same questions, and agree with this or not,

17   but their argument was and what they did was that the

18   confidential source, through the defendant, was meeting a

19   number of different traffickers, and so the agents made a

20   tactical decision, even though the confidential source did

21   inform them at the times Mr. Olivo was either in possession or

22   about to be in possession of drugs, not to intercept those

23   drugs, to maintain the relationship between the confidential

24   source and the defendant so that the defendant could continue

25   to introduce the confidential source to other drug traffickers.

That was the decision they made.  Again I am not trying to

Monday morning quarterback because I know the court said it was

curious, so I wanted to proffer that.  I understand it is not

in the trial record.

THE COURT:  Thank you.  The truth is it kind of

doesn't matter one way or the other.  I am sentencing Mr. Olivo

based on the evidence that I saw and not what might have

happened or could have happened before.  Mr. Olivo, is there

anything you would like to say?

THE DEFENDANT:  No.

THE COURT:  To the balance of Mr. Olivo's family or

friends who just entered, thank you for coming.  I am sure he

appreciates you coming as well.  You would not believe the

number of people who stand before this Court for sentencing who

have no one there to support them.  I am sure he appreciates

your coming.

Under federal law, I am required to consider the

nature and circumstances of the offense and the history and

characteristics of the defendant in determining his sentence.

Federal law requires me to impose a sentence that is reasonable

and no greater than necessary to accomplish the goals of

sentencing, which include the need to reflect the seriousness

of the offense, to promote respect for the law, to provide just

punishment for the offense while avoiding unwarranted

disparities between similarly-situated defendants, to deter

1    criminal conduct, to protect the public from the defendant, and

2    to provide the defendant with needed education or vocational

3    training, medical care or other correctional treatment.

4         I have considered the nature and circumstances of this

5    offense.  This was a distribution network where Mr. Olivo was

6    brokering illegal substances for a substantial period of time.

7    He seemed willing to broker any kind of illegal drug that came

8    along, including methamphetamine, which is a seriously

9    destructive drug to society.  This is a serious crime, although

10   I would note that there does not appear to be any violence

11   associated with Mr. Olivo's drug-dealing.  That said, there is

12   a substantial amount of violence associated with

13   methamphetamine generally.

14        I have considered the history and characteristics of

15   the defendant.  He is 52 years' old and he has no criminal

16   background.  That is unusual for a drug dealer at his level of

17   the organization, I would say.  On the other hand, at the age

18   of 52 he has never graduated from high school or gotten a GED.

19   Clearly he has substantial limitation on movement following the

20   motorcycle accident that left him partially paralyzed.

21        The sentence in this case needs to serve both as a

22   deterrent to Mr. Olivo, who will get out of jail given what my

23   sentences will be, and needs to serve as a general deterrent to

24   others.  The defense argues that a sentence of 10 years, which

25   is the mandatory minimum, I cannot sentence Mr. Olivo below 10

1    years is appropriate.

2            Probation agrees, and the U.S. Government argues that

3    the guideline sentence which is calculated by the Probation

4    Office is at least 188 months, which is something over 15 years

5    is appropriate.

6            I have considered two additional factors in

7    determining what the sentence should be.  The fact that the

8    defendant is confined to a wheelchair will undoubtedly make

9    incarceration more difficult for him than for an able-bodied

10    inmate.  The second thing I have considered is that this

11    conviction is likely to lead to him being deported from the

12    United States where he has lived for many years.  Normally that

13    is a factor that weighs extremely heavily in favor of the

14    defendant.

15            In this case, the evidence is that Mr. Olivo has gone

16    back-and-forth to the Dominican Republic, leading me to believe

17    that the possibility that he will be deported is not as

18    devastating for him as it is for many defendants.

19    Nevertheless, the fact is that he is a permanent resident alien

20    of the United States, and I am confident he would prefer to

21    stay here than to be deported back to the Dominican Republic.

22            All in all, in considering all the factors including

23    the fact, as Mr. Rosenberg said, the fact is that 10 years is a

24    long time in jail, I think it will be particularly long for

25    this defendant.  So I am going to vary and I am going to vary

1    down to the mandatory minimum, impose a sentence on Mr. Olivo

2    of 120 months imprisonment, a five-year term of supervised

3    release.

4            There are mandatory conditions of supervised release.

5    Mr. Olivo, you may not commit another crime.  You may not

6    illegally possess a controlled substance.  You may not possess

7    a firearm or destructive device.  You must be drug-tested

8    within 15 days of release from prison and at least two other

9    times as determined by the Probation Office.

10            The standard conditions of supervision will be

11   imposed, including the following special conditions:  You must

12   cooperate with the immigration authorities.  I don't know what

13   is going to be going on 10 years from now with immigration, but

14   to the extent they determine to deport you, you must cooperate

15   with the authorities.

16            You must submit your person, residence, place of

17   business, vehicle or any other premises under your control to a

18   search on the basis that the Probation Office has a reasonable

19   belief that contraband or evidence of a violation of the

20   conditions of release may be found there.  Any search must be

21   conducted at a reasonable time and in a reasonable manner.

22   Failure to submit to a search may be grounds for revocation of

23   supervised release.  Mr. Olivo must inform any other residents

24   of the premise they may be subject to search pursuant to this

25   condition.

1        The defendant must report to the nearest Probation

2   Office within 72 hours of release from custody and he will be

3   supervised by the district of residence.

4        I have to impose a special assessment of $100.00.  I

5   am not going to impose a fine because I don't think the

6   defendant is able to pay a fine.  I think there was a

7   forfeiture count in the indictment?

8        MS. LONERGAN:  Your Honor, the government is not

9   seeking forfeiture.

10       THE COURT:  The forfeiture count will be dismissed.

11       Mr. Rosenberg, do you have any request in terms of

12  designation of facilities?

13       MR. ROSENBERG:  Your Honor, I think the northeast

14  region would be appropriate.  It is near his family and I leave

15  it to the BOP to decide which of the facilities, maybe

16  Otisville or Fort Dix would be suitable for his condition, but

17  I know that there is a medical facility in Devon in Boston,

18  Massachusetts, but that is far away.

19       Perhaps there is something in the Northeast region

20  closer to his domicile, closer to his family in New York that

21  would be suitable for his physical condition.  Maybe your

22  Honor's judgment will recommend a facility as close to New York

23  City as possible suitable for Mr. Olivo.

24       THE COURT:  I will make that request, Mr. Olivo, and

25  everyone should understand I can only make a request.

FA8JOLIS                          Sentence

1   Ultimately the determination of where Mr. Olivo will be

2   incarcerated is up to the Bureau of Prisons, and I don't

3   control them.

4             Mr. Olivo, you have the right to appeal your

5   conviction and your sentence.  If you're unable to pay the cost

6   of an appeal, you may apply for leave to appeal in forma

7   pauperis.  The notice of appeal must be filed within 14 days of

8   the judgment of conviction.  Anything further from the

9   government?

10            MS. LONERGAN:  Nothing from the government, your

11   Honor.

12            THE COURT:  Anything further, Mr. Rosenberg?

13            MR. ROSENBERG:  Nothing, your Honor.

14            THE COURT:  Thank you, all.

15            MS. LONERGAN:  There is an underlying indictment, so

16   the government is going to move to dismiss the underlying

17   indictment.

18            THE COURT:  The underlying indictment is dismissed.

19            (Court adjourned)

20

21

22

23

24

25