**MANDATE**

15-3280
*United States v. Ventura*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007 is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

  At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 15th day of December, two thousand sixteen.

Present:  ROBERT A. KATZMANN,
       *Chief Judge*,
    RALPH K. WINTER,
       *Circuit Judge,*
    SIDNEY H. STEIN
       *District Judge*.[1]

_____

UNITED STATES OF AMERICA,

      *Appellee*,

   v.                      No. 15-3280

JORGE LAFONTAINE, JOSE LAFONTAINE,
KEVIN VENTURA

      *Defendants*,

JOSÉ ISMAEL VENTURA

      *Defendant-Appellant.*

_____

For Appellee:      MICAH W.J. SMITH, Assistant United States Attorney (Margaret
          Garnett, Assistant United States Attorney, *on the brief*), *for*

---

[1] Judge Sidney H. Stein, Senior Judge of the United States District Court for the Southern District of New York, sitting by designation.

1

N.Y.S.D. Case #
09-cr-1015-4(JGK)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 1, 2017

|  | Preet Bharara, U.S. Attorney for the Southern District of New York, New York, NY. |
|---|---|
| For Defendant-Appellant: | PETER GOLDBERGER (Pamela A. Wilk, *on the brief*), Ardmore, PA. |

Appeal from the United States District Court for the Southern District of New York (Koeltl, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant José Ismael Ventura appeals from a judgment of the United States District Court for the Southern District of New York (Koeltl, *J.*) convicting him after a jury trial of one count of conspiracy to commit murder for hire in violation of 18 U.S.C. § 1958, one count of murder for hire in violation of 18 U.S.C. § 1958, and one count of intentionally killing another in connection with the distribution of 1,000 kilos or more of marijuana in violation of 21 U.S.C. § 848(e)(1)(A). On appeal, he argues first that the district court improperly admitted at trial prejudicial evidence of an uncharged murder; and second that the district court erred by removing a juror during deliberations. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**I. Evidence of an Uncharged Murder**

Ventura operated a marijuana distribution business in northern Manhattan in the 1980s and 1990s. In 2015, he was convicted after a jury trial for his role in the 1996 murders of Eugene Garrido and Carlos Penzo. At Ventura's trial on those charges, the government introduced evidence of an uncharged crime allegedly committed by Ventura's son and others associated with Ventura's marijuana enterprise. Those individuals shot and killed Noel Montanez in the course of an arson targeting a 99-cent store selling marijuana in Ventura's drug territory.

Ventura objected *in limine* to any mention of the Montanez arson-murder at trial. The district court ruled that such evidence was relevant and not unfairly prejudicial and thus refused to exclude it. Ventura now argues that the government "went far beyond its promised limits" at trial when introducing evidence on this topic. Def. Br. 27. Because Ventura did not object at trial to the government's presentation of evidence as inconsistent with its pretrial representations, we review his argument for plain error. *See United States v. Birbal*, 62 F.3d 456, 465 (2d Cir. 1995) (noting that Rule 403 objections challenging "specific inflammatory statements" ordinarily "must be made at trial" to be preserved); *see also United States v. McDermott*, 245 F.3d 133, 140–41 nn.3–4 (2d Cir. 2001) (*in limine* objections only preserved if "not contextually bound"). "Plain error review requires a defendant to demonstrate that (1) there was error, (2) the error was plain, (3) the error prejudicially affected his substantial rights, and (4) the error seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Pattee*, 820 F.3d 496, 505 (2d Cir. 2016) (quoting *United States v. Youngs*, 687 F.3d 56, 59 (2d Cir. 2012)). Harmless error does not meet this standard. *See United States v. Olano*, 507 U.S. 725, 734 (1993).

Even if, *arguendo*, the government exceeded the bounds of its pretrial representations and presented excessive and somewhat prejudicial evidence of the Montanez arson-murder, such error was harmless. "The strength of the prosecution's case is probably the single most critical factor in determining whether error was harmless," *United States v. Castano*, 999 F.2d 615, 618 (2d Cir. 1993) (per curiam), and the government presented a very strong case against Ventura. Two witnesses with firsthand knowledge of the Garrido murder, including one of the men Ventura and his son hired to kill Garrido, testified against Ventura. Admittedly, these cooperating witnesses had agreements with the government and there are thus questions about

3

their credibility. *See United States v. Murray*, 103 F.3d 310, 320 (3d Cir. 1997) (single corroborating eyewitness did not render error harmless because that witness had serious credibility issues). However, the government also elicited testimony from Ventura's sister Clara, who testified that Ventura called her a week before Garrido, her son, was murdered. She further testified that during this call, Ventura told her that if Garrido did not cede his role in the drug business back to Ventura, Ventura "was going to have [Garrido] killed," Trial Tr. 647:3. Additionally, the government elicited testimony from Nuris Castellanos, a friend of Ventura's girlfriend, who testified that she heard Ventura's girlfriend on the phone with Ventura after Garrido was murdered telling Ventura that the "job" was done, which Castellanos took to mean that Garrido was dead. Trial Tr. 238:1-14. Because the testimony of cooperating witnesses was corroborated by the compelling testimony of these two witnesses, who had no agreements with the government, we conclude that "[t]he evidence of [Ventura's] . . . guilt was overwhelming," *United States v. McClain*, 377 F.3d 219, 222 (2d Cir. 2004), and thus that Ventura has not met his burden of showing that the admission of evidence of the uncharged murder was plain error.

**II.     Juror Removal**

Ventura next challenges the removal of Juror No. 2 after deliberations had commenced. On the first full day of deliberations, the district court received a note from the jury expressing some concerns about Juror No. 2. After reading the note and consulting with the parties, the district court drafted a note in response urging the jurors to listen to one another and to follow his instructions. Overnight, the government made inquiries into Juror No. 2's background. During this investigation, the government uncovered a variety of minor arrests and summonses, some recent and some older, including several that had been adjourned in contemplation of dismissal or sealed. In voir dire, the district court had asked if any juror had "ever been involved in an

4

offense involving the drug laws," App. 140, but Juror No. 2 did not disclose his prior arrest for possession of marijuana. The government also discovered that Juror No. 2 had been the victim of an assault more than a decade prior, but he did not disclose this on voir dire when asked whether he had ever been the victim of a crime. After the government informed the district court of these items, the district court summoned Juror No. 2 to discuss his lack of candor on voir dire. After a lengthy exchange and over defense counsel's objection, the district court dismissed Juror No. 2 because that juror "deliberately gave false answers to questions" during voir dire. App. 491. On the next day of trial, defense counsel requested dismissal of the charges against Ventura because the government had only conducted research on "the one juror whom the jury's notes indicated might not have been satisfied with the government's proof." App. 516–519. The district court denied the request.

Ventura argues that the district court abused its discretion by removing Juror No. 2 based on the results of an investigation that the government conducted due to that juror's views of the sufficiency of the government's evidence. *See United States v. Thomas*, 116 F.3d 606, 621–22 (2d Cir. 1997) (quoting *United States v. Brown*, 823 F.2d 591, 596 (D.C. Cir. 1987)). The government argues its investigation was not motivated by its perception of the juror's views of the evidence, but instead on certain of the juror's statements and conduct that caused it to believe that juror had "some undisclosed connection to this case," App. 521, an "extrinsic bias" not subject to the rule articulated in *Thomas*, *United States v. Spruill*, 808 F.3d 585, 587, 594 (2d Cir. 2015). The district court rejected Ventura's argument that the government had an improper motive for conducting its investigation of Juror No. 2. Because the district court did not find that the government had specifically targeted Juror No. 2 for an investigation because of his perceived views on the evidence or had otherwise acted in bad faith, the district court did not

5

abuse its discretion by removing Juror No. 2 for his untruthfulness in voir dire unearthed by that investigation. *See United States v. Parse*, 789 F.3d 83, 111 (2d Cir. 2015).

We have considered Ventura's remaining arguments and find them to be without merit.

For the reasons given, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

6